## HERMAN ENGEL *vs.* ANGELO CONTI.

First Judicial District, Hartford, October Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

Words accompanying conduct which is of an equivocal and ambiguous character may be admissible if tending to show its real nature and significance.

In an action to recover damages for criminal conversation and the alienation of his wife's affections, the plaintiff admitted on cross-examination that within two weeks he had spent the night alone with his wife in a bedroom of a hotel in an adjoining town, but insisted that they did not sleep together. On his redirect examination he was allowed to testify, against the defendant's objection, that his wife then said to him that she had come to him for the last time; that the defendant wanted to settle the suit; that she did not want to go to court; that there was no use in proving things that happened a year ago; that she also asked him who his witnesses were; and that to all of this he replied that he had supposed she wanted to ask him to live with her again, and not to talk about the case, and that he should insist upon its trial. *Held* that there was no error in admitting this evidence, since it tended to show that the conversation—whether the statements therein contained were true or not in point of fact—was not the expression of mutual affection, but that the wife was acting as an emissary of the defendant and in an attitude of hostility to the plaintiff, and therefore rendered more probable the truth of his previous testimony that the relations between them on this occasion were not such as might commonly be supposed to attend the marriage state. (Two judges dissenting.)

It would be the duty of the trial judge, if requested, to instruct the jury that such evidence was not to be considered in determining the truth of any statements made in the conversation.

Argued October 6th—decided November 7th, 1905.

ACTION to recover damages for criminal conversation and for alienating the affections of the plaintiff's wife, brought to the Superior Court in Hartford County and tried to the jury before *Gager, J.;* verdict and judgment for the plaintiff for $1,250, and appeal by the defendant. *No error.*

*Joseph P. Tuttle,* for the appellant (defendant).

*Benedict M. Holden*, for the appellee (plaintiff).

BALDWIN, J.   The complaint alleged that the affection
of the plaintiff's wife for him had been wholly destroyed
and that he had wholly lost her society.   In proof of this he
testified at the trial that he had not lived with her or had
any connection with her during the preceding eight months.
On cross-examination he stated that within two weeks he
had gone with her one evening from Hartford (where each
then resided) to the neighboring city of New Britain,
where they spent the night at a hotel in the same bedroom,
she sleeping in the bed, and he on the floor and not with her.

Having stated on redirect examination that they talked
together while in the hotel, he was asked what was said by
each.   This question was objected to, but admitted, and in
reply he testified that she said that she had come to him for
the last time ; that the defendant in the present action
wanted to settle it; that she wanted him to drop it; that,
if he did, the defendant would drop one which he had
brought against the plaintiff ; that she did not want to go
to court; and that there was no use in proving things that
happened a year ago ; and also asked who his witnesses
were ; to all of which he replied that he had supposed she
wanted to ask him to live with her again, and not to talk
about this case, and that he should insist upon its trial.

Upon   recross-examination   he   testified,   among   other
things, that he went to New Britain at her solicitation and
expense ; that she told him that she wanted to talk to him
in the cars while going there ; that she induced him to go
to the room at the hotel by pretending to be ill ; and that
neither undressed during the night.

The question admitted on the redirect examination was
a proper one.   In cross-examination the plaintiff had ad-
mitted being in his wife's society at a time when in his
complaint he had asserted that he was totally deprived of it.
He had testified that on this occasion they had spent the
night in a bedroom containing only one bed, and his accom-
panying assertion that she occupied it alone, if left without

further support or explanation, would not have been likely to weigh much with the jury.

This explanation his counsel sought to elicit by showing what on this occasion was said by him to his wife and by her to him. The character of this conversation would naturally tend to make the truth of his testimony that he had slept upon the floor either more or less probable. An appropriate way to characterize it was to put before the jury the language used. His wife and he had been, on the night in question, in an equivocal situation. Was their conversation the expression of mutual affection, or did it show her bent on opposing his interests and endeavoring to promote those of the defendant? The subject of investigation in the cause on trial was the relations of this man and woman. Had they been such as commonly attend the marriage state? Were they of such a nature during the night spent in this hotel bedroom? This could only be determined from their acts on that occasion; and of these acts what each then said to the other formed a part. It was immaterial, in this aspect, whether any statement of fact made by either was true or false. The only important thing in regard to it would be that it was made there and then. It was admissible as one of the circumstances attending and characterizing a meeting of two persons, the purpose and consequences of which it was material for the jury to determine in order to answer the issues closed. Whether she had in fact come to her husband for the last time was not the important thing, but whether she said that she had. Whether the defendant was in fact ready to drop his suit if the plaintiff would drop his was immaterial, but if she said that he was, that would tend directly to show that she put herself in the attitude of an emissary of the adverse party in a litigation involving the existence of criminal relations between him and herself. Words accompanying conduct can always be put in evidence, where the nature and significance of such conduct is in controversy and it is of an equivocal character which these words tend to explain. *Avery* v. *Clemons*, 18 Conn. 306, 309 ; 3 Wigm.

on Ev., § 1772. They then become strictly relevant to the issue, since the fact that they were uttered bears on the probability that the conduct under consideration was in fact of one description or of another. *Plumb* v. *Curtis*, 66 Conn. 154, 166. In a case like the present, where it was important to show the feelings of those whose conversation was admitted in evidence, proof of this kind may be of special weight. *Vivian's Appeal*, 74 Conn. 257, 261.

It is undoubtedly true that a jury, unless properly cautioned, may be in danger of crediting the truth of words so spoken, and of drawing conclusions from them other than those for which alone they can legitimately serve as a foundation. If the defendant requested such a caution, it was no doubt given, as no exception is taken to the charge.

It is immaterial that the only witness offered to prove the nature of the conversation was one of the participants, and he the plaintiff in the action. The testimony, so far as its admissibility is concerned, stands on the same footing as if it came from a disinterested stranger who had overheard all that was said while occupying an adjoining room.

The rule against the admission of hearsay evidence is peculiar to Anglo-American jurisprudence, and did not obtain an established foothold in it until the close of the seventeenth century. It is not one that can be safely strained beyond its established limits, and these are observed when no declarations are excluded which are offered to characterize conduct of an ambiguous nature, which they accompany and serve to explain, and for the purpose simply of showing that they were made, and not that what was declared was true. Wigm. on Ev., §§ 1364, 1768.

There is no error.

In this opinion HAMERSLEY and PRENTICE, Js., concurred; TORRANCE, C. J., and HALL, J., dissented.