## FRANK RICH v. MAX RANKL ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 12-6803-1343

---

Argued July 7—decided September 26, 1969

*Joel E. Janenda,* of Manchester, for the appellant (named defendant).

*Robert B. Basine,* of Hartford, for the appellee (plaintiff).

Kosicki, J. The plaintiff brought suit against the defendants in two counts: (1) to recover damages for misrepresentations by them in the sale of their house and land, inducing the plaintiff, in reliance on these representations, to purchase the property to his injury; and (2) to recover damages for the named defendant's malicious interference with a contract for the sale of the house by the plaintiff to Kendall B. Pierce, as a result of which interference the plaintiff was forced to give up certain contractual rights, to his special loss and damage. The court found for the plaintiff against the named

defendant and awarded damages. From this judgment the named defendant, hereinafter referred to as the defendant, appealed. It is conceded by him that his motion to correct cannot be pursued as to the subordinate facts found by the court, and the appeal must be confined to the claims of error aimed at the conclusions reached by the court.

The court found the following facts. The defendants were the owners of a house and lot on the east side of West Street in Hebron. They wanted the plaintiff to build them a new house and take their house in trade. To determine the value to be credited to the defendants for their house, the plaintiff retained Henry Sweet, a real estate broker and developer, to appraise the house. Sweet inspected the house for the purpose of appraising it. He was accompanied by the defendant. Sweet asked the defendant about different items, such as the septic tank, which were not susceptible to visual inspection. The defendant told Sweet that the septic tank was in perfect condition and gave him no trouble. While inspecting the basement of the house, Sweet noticed a sump pump hole, a square opening in the concrete basement floor for the purpose of pumping water out of the basement if required. In response to Sweet's inquiry, the defendant told him that there was no water problem in the basement and that the sump pump hole was put in the floor as a precautionary measure and had never been used. As a result of Sweet's appraisal of the house and the information given by the defendant, concerning the septic tank and the water condition of the cellar, Sweet appraised the defendants' house, and the defendants were given, as credit toward the price of their new house, Sweet's appraised value. When the defendants' new house was completed by the plaintiff, the defendants moved out of the old one, and title to their old house was transferred to the

plaintiff. The plaintiff then contracted to sell the defendants' former home to Kendall B. Pierce for $15,500.

Before the scheduled closing in March, 1968, Pierce asked the plaintiff for permission to go into the house and paint the kitchen and bathroom. While Pierce was working in the kitchen of this house, the defendant, who was unacquainted with Pierce, came to the house and told him that the septic tank was defective and had to be replaced, that a sump pump should be installed in the cellar because of a water condition which existed there, and that the kitchen sink drained through a drainage system across West Street, for which there was no drainage right of way for the house. Because of the defendant's statement, Pierce wished to withdraw from his agreement to purchase the house from the plaintiff. To satisfy Pierce, the plaintiff had to repair the septic tank system, instal a sump pump in the cellar of the house, and change the drainage system for the kitchen. The sale of the West Street house from the plaintiff to Pierce was delayed for a period of six months to give the plaintiff time to make the necessary repairs and changes. During this six-month period, the oil burner in the house was damaged when water filled the cellar because of the lack of a sump pump. As a result of the defendant's statements in connection with the house, the plaintiff had to make the following expenditures in order to sell the house to Pierce at the originally contracted price: septic tank and drainage field, $600; sump pump in cellar, $165; drainage change in kitchen, $75; six months' extra taxes, $180; six months' fuel oil, $50; extra interest to bank, $160.

The trial court reached the following conclusions: (1) The defendant made false representations to

Sweet, who was an agent acting for the plaintiff, that the septic tank was in perfect condition and gave him no trouble and that there was no water problem in the basement and hence a sump pump was not necessary. (2) These false representations were of an existing fact. (3) The representations were fraudulently made. (4) The representations were made under circumstances which entitled the plaintiff to rely on them, since the represented facts were not open to discovery by inspection. (5) The plaintiff was induced to rely on the false representations of the defendant. (6) The plaintiff was damaged in the amount of $1230, plus taxable costs, as a result of his reliance on the false representations of the defendant.

In his brief and argument the defendant has narrowed the issues and pursues only the claim that the court erroneously concluded that the defendant was legally liable for the items of damage listed in the finding and erroneously concluded that he made actionable misrepresentations. "The complaint, although not accurately drawn, sufficiently states that the false and fraudulent representations and acts were made and done by the defendant with the intention of defrauding the plaintiff, and that this fraudulent intention prevailed. The defendant evidently so regarded it, as he did not venture to question its sufficiency or certainty by a demurrer or otherwise." *Kronfeld* v. *Missal,* 87 Conn. 491, 493. In the case before us, the defendant testified, and his testimony, although in some respects in conflict with that of the plaintiff's witnesses, was in general agreement with the plaintiff's claim of misrepresentation and deliberate nondisclosure of facts material to the plaintiff's purchase of the defendants' house. The concealment of the material facts relating to the septic tank, water seepage and drainage defect, taken singly, may not have given a right of

action, but when taken together, they lead up to the culminating act of fraud in compelling the plaintiff to correct them to his loss in carrying out the contract with Pierce. When a person makes representations as to conditions existing on premises to be sold, he is to speak the truth. Where his silence will convey a false impression of the truth, there may be as much fraud as in a false statement. "A man's intention in doing an act may be proved by his acts or inferred from his conduct." *Kronfeld* v. *Missal,* supra. Proof of intention is not limited to direct evidence. Id., 494.

It is not indicated in the court's finding on which count of the complaint judgment was rendered. The conclusions of the court lead us to believe that the judgment was based on the first count. We therefore need not address ourselves to the pleadings relating to the second count or to the evidence admitted in support of it, except as such evidence tends to support the findings and conclusions on the first count.

The defendant may not, by his own concession, attack the finding of facts by claiming they are without support in the evidence. "The court's conclusions are to be tested by the finding and not by the evidence. *Davis* v. *Margolis,* 107 Conn. 417, 422 . . . ; *City Bank & Trust Co.* v. *Ruthinian Greek Catholic Church,* 102 Conn. 609, 611 . . . ; Maltbie, Conn. App. Proc. . . . § [165]. The only question presented by the . . . [defendant's] claim, therefore, is whether the subordinate facts properly found by the court support its conclusion . . . ." *Klahr* v. *Kostopoulos,* 138 Conn. 653, 655.

The rule in Connecticut as to actionable liability because of silence or nondisclosure of a material fact, to the injury of a purchaser of real property, is well established. In *Richard* v. *A. Waldman &*

*Sons, Inc.,* 155 Conn. 343, the defendant sold the plaintiff a house and lot. The lot was considerably narrower than represented on the defendant's plot plan and contrary to the zoning regulations. The defendant was unaware of the mistake made by the plot plan engineer. Our Supreme Court held (p. 346): "The defendant claims that '[a]t most, there was an innocent misrepresentation of fact by the defendant.' An innocent misrepresentation may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. 23 Am. Jur. 920, Fraud and Deceit, § 127. The facts, as properly found, clearly show that the . . . [plaintiff] had reasonable grounds upon which to attribute to the defendant accurate knowledge of what . . . [he] represented . . . . This was a statement of fact about which the defendant . . . had special means of knowledge . . . and one on which the . . . [plaintiff . . . was] entitled to rely. . . . The . . . [plaintiff] may seek damages resulting from the defendant's misrepresentation and at the same time retain title to the property. . . . It would be unjust to permit the defendant under these circumstances to 'retain the fruits of a bargain induced by' a material misrepresentation upon which the . . . [plaintiff] relied. *E. & F. Construction Co.* v. *Stamford,* 114 Conn. 250, 258, 260 . . . ; see 5 Williston, Contracts (Rev. Ed.) § 1510, p. 4217." The relief granted in the *Richard* case was the cost of the construction work and the moving of the house to relocate it on the plaintiffs' lot. A-469 Rec. & Briefs 92. This is dispositive of the defendant's claim that the measure of damages the court should have applied was the difference between the actual value of the property and its value had it been as represented, with such additional consequential damages as have resulted from the fraud. *Commonwealth Fuel Co.* v. *McNeil,* 103 Conn. 390, 410.

The court's conclusion that the defendant sold his real property to the plaintiff by misrepresenting its condition in the respects indicated or by failing to disclose defects which were not open to ordinary observation and were concealed from reasonable inspection, thus inducing the plaintiff to purchase the property to his damage, is amply supported by the finding and the evidence. See such cases as *Seymour Water Co.* v. *Horischak,* 149 Conn. 435, 439; *Warman* v. *Delaney,* 148 Conn. 469, 472; *Presta* v. *Monnier,* 145 Conn. 694, 698; *Clark* v. *Haggard,* 141 Conn. 668, 672; *Haddad* v. *Clark,* 132 Conn. 229, 233.

There is no error.

In this opinion DiCenzo and Jacobs, Js., concurred.